Good morning, and before we begin, I want to say on behalf of Judge Bennett and myself, we're so pleased to have Judge Dorsey join us from the District of Nevada, and I know you are very busy down there, so thanks for taking the time to come up and helping us out on the night search. Thank you. Thank you, my pleasure. We have a number of cases submitted on the briefs, and we'll proceed to oral argument in Meeks v. Experian. May it please the Court, Yakov Roth for the appellant, Experian Information Solutions, or EIS, in the brief. I'm hoping to reserve three minutes for rebuttal, and I'll watch the clock. Your Honors, the plaintiffs here admit that they entered the arbitration agreement, and the plain text of the arbitration agreement includes ECS affiliates, and there is no dispute that EIS is, and always has been, an affiliate of ECS. That should have been enough to compel arbitration of this case, but the District Court twice refused to grant that relief. I'd like to start with the Court's denial of our first motion to compel, because if this Court agrees that that order was erroneous, then there's no need to reach any of the issues associated with the second motion. With respect to the first motion, the District Court reasoned that EIS was not a party to the agreement. Respectfully, that was mistaken, and I'd start with the text of the arbitration agreement, which can be found on pages 58 and 59 of the excerpts of record. Now, what it says is, ECS and you agree to arbitrate all disputes and claims, and so on and so forth, and then defines ECS for purposes of this arbitration provision to include its affiliates. So, why is it called a third-party beneficiary theory rather than a party to the contract theory? Your Honor, the key difference is that the party is the one who is making a promise in the agreement. The third-party beneficiary isn't making a promise. The third-party beneficiary is benefiting from someone else's promise in the agreement. The way this is worded, you have ECS on the one hand, defined to include affiliates, and the consumer on the other hand, and they are exchanging mutual promises to arbitrate certain disputes that come up between the two of them. That makes them the parties to the arbitration agreement, because it is a bilateral promise on behalf of both ECS and its affiliates on the one hand, and the plaintiffs on the other hand. So, we think that makes it a party, and I would say as a matter of precedent, that's how courts have always looked at language like this. I mean, we have in this court the Adams decision that's directly on point. We have the Revich decision, which plaintiffs rely on quite heavily, but actually confirms, I think, our understanding of how this works. In Revich, the affiliate only became an affiliate after the time the agreement was reached, and the court said, you know, you couldn't have anticipated that, that's not within the scope. But the entire analysis presupposes that if the entity had been an affiliate at the time the agreement was reached, then it would be able to enforce the clause. So, we have those decisions from this court, and then there's just case after case after with this language, and actually this agreement itself, the same contract. I know Judge Dorsey has seen this issue several times in the district court and has analyzed it the same way as well, most recently in a case called Goodhart versus Tesla a couple of years ago. So... You would agree that this is an issue of state law as to whether or not your client is a party, correct? I agree with that, Your Honor, and I don't have any issue with the way plaintiffs define a party. They say a party is the one who is assenting to be bound by a promise in the agreement. I think that's right. I just think the language of the agreement provides that ECS affiliates, including EIS, are making such a promise and have assented to it. So, if we've assented to it and they've assented to it, it's just hard for me to see what the Your... Experience... Thank you. Experience not... So, because it's not a contract directly between Experian and the plaintiffs here, I think the question, though, is, going to your assent argument, how do we know Experian was assenting? So, Your Honor, I would just take issue with the premise there a little bit. There are parts of the contract in which it's only ECS that is making promises to the plaintiff, but with respect to the arbitration agreement in particular, which is the relevant agreement for purposes of this case, the contract is not between ECS and the plaintiffs. It's between ECS defined to include its affiliates and plaintiffs. So, we are a party. EIS is a party to the arbitration agreement, which, as the Supreme Court has told us, needs to be looked at as a standalone contract that nested inside a larger contract. What consideration did your client give? Oh, Your Honor, the consideration is the mutuality, as this Court has made clear. So, we are agreeing to arbitrate claims that are brought against us, which, by the way, happens all the time with consumers who sign this agreement and then take EIS to arbitration on their FCRA claims. So, this is not a one-way street. This happens in both directions. They agree to arbitrate claims that they have, and we agree to arbitrate claims as well. That's the consideration and the mutuality. So, if this is a question, I mean, this comes up a fair amount, and if it's a question of state law, why shouldn't we just certify this issue to the California Supreme Court and let them tell us how they view it? Well, Your Honor, I don't think there's any disagreement about the state law principle. So, I think we all agree on what a party is. I don't see a California case precisely on point on this issue, but maybe I'm overlooking. Well, I mean, Your Honor, I think it's because there isn't really a legal disagreement. So, plaintiffs have said what they think a party is under California law. We fully agree. Plaintiffs just don't grapple with the text of the agreement. I mean, they just never explain what it means and how the direct reference to affiliates would not cover EIS, who was concededly and undisputedly an affiliate of ECS at the time. And I agree with Your Honor. This happens all the time, and there's nothing unusual about it. You know, if I walk into a car dealership to buy a car, my point of contact there is the local dealership. But the agreements that I sign are going to include, very likely will include, promises to and from a broader set of entities, the parent company, maybe an affiliate, maybe the manufacturer of the car or the entity that's providing the lease financing. So, it's not unusual to see a contract that sweeps in a broader set of parties for purposes of an arbitration agreement. And again, we just, you know, the list of cases that have said this just is endless. And plaintiffs' only response to that is to say, well, nobody's ever really analyzed this before, which I don't think is, especially I don't think that's correct. I think it's just not a hard question, given the terms. Your Honor, I would, I guess I would turn, if I could, to the second motion and make sure I address that as well. Because we think even if there were any doubt about EIS's status as a party, at minimum EIS would be considered a third-party beneficiary to the contract. Because there's no other reason to include the affiliate language in the agreement other than to ensure, at minimum, that the affiliates can derive the benefit from the arbitration agreement. And the district court never disputed that. I mean, the district court actually has an opinion saying, yes, if it says affiliates in the contract, you're plainly a third-party beneficiary and can enforce. That's the Lacayo case that we said in the briefs. Right. And that was strictly a third-party beneficiary case, as I read it. Correct? That was. Correct. That was. By the way, the language there was different. Why did you, I mean, the district court lighted on the fact that you expressly disavowed the third-party beneficiary theory, at least in the district court's view. I'm not quite, maybe you can enlighten me on why you did that or your counsel did. Sure, Your Honor. I wouldn't say we disavowed it, but I'll tell you what happened and explain it. We filed the initial motion saying, here's the language, we're a party to the contract, we can enforce it. They came back and said, you're not a party to the contract, and you can't argue third-party beneficiary because you didn't include it in your opening brief, and anyway, you're not one. Okay. So that was their argument. And what we said in the reply was, and I'll just read it to you, this is from page five of the reply, which is ECF 50 below. Did you say legally irrelevant? We said, because the record evidence plainly demonstrates that EIS is a party to the arbitration clause in the terms of use, plaintiff's extended argument disputing the third-party beneficiary status of EIS is irrelevant, and then we cited a bunch of cases saying that. So it really was not a disavowal. We were saying, you don't need to go there. The court doesn't need to get to that question. We went on this broader antecedent question of party status given the way this agreement is worded. And so you don't need to get into any of that. Of course, we didn't want to because they said we had already forfeited it by not raising it in the opening brief, which, you know, there's some truth to that. You're not supposed to raise new arguments in a reply brief. District court came out against us. We asked him to reconsider, and we cited more cases, and district court said, well, you have a point. The cases have done it this way, but I think third-party beneficiary is the better way to do it. Within a week of that, we filed the second motion saying, okay, we're going to make the same argument. We're going to say third-party beneficiary this time. And that's when the district court said, well, you had your chance. You didn't say it the first time, and now you're out of luck, which respectfully is just that's squarely contrary to the Fourth Circuit decision in Dillon, which said specifically you're not limited to one shot at a motion to compel arbitration. But, counsel, did the court even say that, or did the court deny your motion for lack of jurisdiction because the prior orders were already on appeal? The court said both, Your Honor. So the court said, I don't have jurisdiction because of the appeal, and even if I had jurisdiction, here's what I would deny. I would exercise my discretion not to allow you to make this second motion because you didn't raise it the first time. He's allowed to do that, by the way, as an indicative ruling, so there's no problem with that. But the substance of it, respectfully, was mistaken because there isn't a limit in the local rules or anywhere else saying you only got one shot at a motion to compel. And, in fact, there are many, again, many cases in district courts in this circuit as well, not just Dillon, that have allowed this when there's some perceived deficiency in the first motion. You don't attach the right document or you haven't explained the legal argument properly. The courts say, okay, you can cure that because you are not limited by the rules to one motion in the way, for example, Rule 12 limits parties expressly to one motion under that rule. There's no deadline. As long as you haven't waited so long as to sort of trigger a waiver, then there's no problem with raising it in a fresh motion. And so we think, number one, we think the court didn't have discretion to refuse to consider the merits. And I would also add, even if there were some discretion here, we think it was an abuse of discretion on these facts, given that the court acknowledged we had a point, in his words, in framing the initial motion the way we did, promptness in raising the second motion, and complete lack of prejudice on the other side to it. We think the court should have reached it and granted that relief. And if I could reserve. Certainly. Thank you, Your Honor. May it please the Court, Matthew Wessler for the appellees. I'd like to begin, I think, where my friend on the other side began, which is what experience core theory here is for the enforcement of this contract. And it's that a definitional clause in a contract can expand the definition of first parties to include a wide range of third parties, including an affiliate, and that as a result of that definitional clause, any of those third parties can enforce the contract directly, even if they and their claims otherwise have no connection to the contract itself. And I think, Judge Thomas, you know, your question about California law, I think, is a good one. It's a tell, I think, that Experian hasn't cited any California case that adopts that expansive and, I think, novel theory. Counsel, let me push back on expansive and novel. I mean, we have on ER 58 a big heading that says dispute resolution by binding arbitration. It says ECS and you, and then like a normal contract, it defines what ECS means and what you mean. And to me, the clear reading of this contract is that ECS includes affiliates, and ECS and its affiliates are agreeing to arbitrate with consumers, and consumers are agreeing to arbitrate with ECS and affiliates. So I don't see what's novel about the fact that you have embedded in the contract an arbitration agreement that has some different terms than the general contract. So what's so novel about that, about their argument? Sure. So a couple of responses to that, Your Honor. Just looking at the text of the clause, it doesn't just refer to affiliates, right? It refers to a broad range of different third parties. That includes parent entities, subsidiaries, affiliates, agents, employees, predecessors and interests, successors and assigns, websites of the foregoing, as well as authorized or unauthorized users or beneficiaries of the services. And it doesn't just say that consumerinfo.com's relevant third parties, all of those entities that are related to consumer.com can, in theory, enforce this contract. It also says that any of those third parties of the consumer are also, in theory, entitled to enforce the contract, which would mean, under experience theory, which, by the way, is not just that any affiliate can directly enforce this contract. It's that any one of these third parties is able to come into a court and enforce this contract. It means that a consumer who maybe had an employee, a nanny, let's say, could directly enforce this contract against Experian or a user of one of the services or anything. And when we're asking what about this definitional clause, it fits within a reasonable expectation of a consumer who's entering into a contract for services provided not by Experian but by consumerinfo.com. The objective inquiry has to be whether it falls within those reasonable expectations that, in agreeing to these terms, a consumer would be agreeing to be bound by this clause or this requirement for this, again, broad—I've almost never seen a clause like this—but a broad range of potential third parties. If I can make one more point, though, Judge Bennett, which is the novel theory here is that all of these third parties, just by being included in this definition, can directly enforce this contract. It does not mean, however, that third parties are left out to dry and have no means available to them to enforce the contract should they want to. That's what the third-party beneficiary doctrine allows. It's what California law says exists for a range of different kinds of third parties. And do you agree that they are a third-party beneficiary? We don't agree that they're a third-party beneficiary, no. Okay, so they're not a third-party beneficiary. They're not a party. They're just out. They're out, but they're out for different reasons. They're out as a first party because they're not a contracting party or a signatory to this contract. They're out as a third-party beneficiary not because there's some defect in the definition. In fact, if you, under California law, want to be a third party, you almost have to be included in some way in a contract like this. The definitional clause is relevant. But the third-party beneficiary test under California law requires much more. It requires, for instance, that you show that the motivating purpose behind the contract was to confer some benefit on one of the third parties. Would it work, in your view, if instead of saying affiliates, it said affiliates including EIS? Not for this claim, and I'll tell you why. Doesn't whether it goes to the claim or not, doesn't that go to the arbitrator under the contract? It doesn't, Your Honor, because the second and third parts of the test under California law ask whether enforcing the contract, allowing a third party to enforce the contract is consistent with the objectives of the contract. And this is what this Court in No looked at, the objectives of the contract. If you look at the arbitration clause in this case, it is narrowly circumscribed to permit only the arbitration of claims arising out of the contract that are directly related to the services provided under the contract. And the claims at issue in this case are neither. The claims are FCRA claims. They have nothing to do with this contract, nothing to do with the services provided under it. Now, if that was different, Your Honor, if, for instance, let's say like in Revitch, the scope of the arbitration clause permitted any kind of claim to be arbitrated, well, I think in that case, Experian might have a better argument under the third party beneficiary doctrine. So in your view, what the district court, in addition to what it did, should have just said this claim is not arbitrable? No. I think it did, well, first of all, I think it did, it ordered its decisions correctly, which is to say that Experian did not raise the third party beneficiary argument in its motion to compel arbitration. So it held that that argument was waived. But even if it hadn't waived the argument, the theory that it is somehow a third party beneficiary fails, I think, all three of the Goodwinard requirements. It wasn't identified explicitly in this contract in any way. You know, as you suggested, it could have been more, it could have, with specificity, said an affiliate including EIC. It did not do that. And it also cabined the nature of the claims that are capable of being arbitrated, which means the objective of the contract was to narrowly circumscribe to whom the benefit might flow under a third party beneficiary doctrine. Why don't you, if you don't mind, read me the part that you say narrowly circumscribes the claims. And I have the contract in front of me, so if you can refer me to the ER page or the page of the contract. Well, I believe it's ER 59 or 60. I don't know if I can just get the... Yeah, sure. Yeah. So if you look at ER, I believe it's 59, although now that I'm looking at it, it may be 60. But it says specifically that the types of claims that are arbitrable, the scope essentially of the arbitration claims, are those that are directly related to the services or websites and that arise out of the contract. And so that, in your view, as a matter of contract law, trumps the statement at the first full paragraph on ER 60, all issues are for the arbitrator to decide, including the scope and enforceability of this arbitration provision, as well as the agreements, other terms and conditions. Arbitrator shall have the exclusive authority, et cetera, et cetera, et cetera. What you just read trumps that. It trumps it in this sense, Your Honor. What we're asking at this stage in the case is a formation question. So did the consumer form a contract specifically with Experian? And if we are asking that question as a matter of third-party beneficiary doctrine, to answer that question, whether there was a contract that was formed between the consumer and Experian, one of the threshold requirements is that the contract not only be, that a motivating purpose of the contract be to benefit someone, an entity like Experian, but also whether enforcing the contract against the consumer in this context is consistent with the objectives of the contract. And you look to the text of the contract to determine whether, and the reasonable expectations of the parties to determine whether it's consistent with the objective of the contract. And in this case, the arbitration clause's objective is to narrowly circumscribe the types of claims that can be arbitrated. I'd like to just also respond to something that my friend on the other side said early on in his argument, which is that a case like Revitch actually supports his theory. And I think that is squarely wrong. I think that this question, whether or not Experian, as a third-party affiliate, can somehow enforce the contract directly, is foreclosed by what the majority, and I know, Judge Bennett, you dissented in that case, but what the majority said in Revitch. And if you look specifically at footnote 2 in that case, DirecTV there made the same set of arguments that Experian has made here, that there was an arbitration clause that was between AT&T and a consumer, and the arbitration clause defined AT&T, the party, to include an affiliate or affiliates, just generically. It didn't say anything about DirecTV. And what DirecTV said was, well, you know, we're an affiliate. The contract defines AT&T, the contracting party or the signatory, as not just AT&T but also any affiliates. And so the inquiry should end there. We just get to enforce this contract as though we were AT&T. And the majority in Revitch said, no, that's wrong. The only way you get to enforce the contract is as a third-party beneficiary. You are not a direct signatory or contracting party to this contract, and so you have to show that under California law, and, you know, Judge Thomas, you asked, you know, what does California law have to say about it. I think Revitch speaks to this in footnote two, where what Judge O'Scanlan said was under California law, unless you're a signatory to the contract, you have to show that the law imposes some privity on you, between you and the consumer. And you don't think the majority in that case was relying on the fact that at the time of contract formation there was no such affiliate? No, I don't think this part of the decision relies on that at all. I think, in fact, if you look at the analysis, it's at the very beginning of the analysis where the court says this is a formation question, DIRECTV asks us to simply allow it to enforce the contract no differently than if it were AT&T, and that's not right because the only way it can enforce the contract is as a third-party beneficiary. And it is not a third-party beneficiary because it wouldn't meet any of the requirements or match the reasonable expectations of what a consumer who was entering into a contract with AT&T would think about who it was agreeing with for the services provided under the contract. And there's nothing in the – I'm sorry. No, please, go ahead. No, no, no, please. How does California law define signatory? Well, California law doesn't have – hasn't codified that phrase. I will say that this court has repeatedly used the term to denote the contracting party, the actual party that is agreeing to provide services under the contract. Now, it gets a little bit more complicated in the digital age. Here I would submit that that question is an objective one that asks both what the and also looks to the terms of the contract. On ER38 here, there's an example of what I think is the digital equivalent of a signature page. It's the screenshot in the record that will show the point at which a consumer is clicking a button that agrees to the terms and conditions. So we know that on that page it's when the consumer identifies themselves. That's the page in which the only corporate references that are made are for And so I think that is the best evidence of actually who the signatories are or the actual contracting parties, which is consistent, Your Honor, with the way that this contract was drafted and what expectations a reasonable consumer would have. No one, I think, reading this contract would ever expect or think that in agreeing to pay for certain credit monitoring services, which are essentially what's They would also be binding themselves to a whole host of unrelated third parties who owe no obligations under the contract, who don't provide any services, and who could somehow later piggyback onto this contract simply because they're trying to keep unrelated claims out of court and force them into arbitration. EIS, though, is actually mentioned in the contract, for example, on ER54, right? They're mentioned a lot, Your Honor, yes. If I could, though, none of those references is EIS or Experian ever actually obligated to provide any services to the consumer, and most of the references, if you look throughout this contract, actually disclaim any connection with or obligation on behalf of Experian based on the services that are provided. Just as an example, one of the points, ER91 of the contract, says, Your credit information may be provided by a third-party credit reporting company, and ECS, so consumerinfo.com, is not responsible for the info contained within those reports. That's at ER91. Another example is at ER61, where the contract says Experian, referring to EIS, provides a proprietary consumer disclosure that is different from the consumer credit report provided by ECS. This disclosure report must be obtained directly from Experian. And so what's going on in this contract is actually quite the opposite of what you might see or expect if Experian was truly somehow not a stranger to this contract. It is drawing a clear distinction between the two companies, and I see that I'm out of time unless the Court has further questions. Any further questions? Thank you, counsel. We have a rebuttal. Thanks, Your Honor. Let me just start with that last point. EIS and ECS are different entities. They do different things, and that's reflected throughout the contract. It's not true that EIS has no role in this contract. I would point to ER79, which talks about the online dispute center service and how by signing up you authorize ECS and the Experian Credit Bureau to deliver alerts and notifications, provides that ECS and or the Experian Credit Bureau will not use certain information, may be shared by Experian and or the Experian Credit Bureau. The Experian Credit Bureau is EIS. So there's lots of parts in the contract that talk about ECS. There's parts that talk about EIS, and the key thing for this case is that the arbitration agreement defines the parties to include affiliates that include EIS. Now, I want to address the scope issue because we heard a lot about the scope of the contract, and this contract does have a scope, but that issue, as Judge Bennett noted, is expressly, clearly, and unmistakably delegated to the arbitrator. So if they want to argue that these claims don't fit within the scope of the arbitration clause, they are absolutely free to make that argument to the arbitrator. That has nothing to do with the question of who's a party or who's a third-party beneficiary. They're trying to smuggle those scope disputes into this antecedent question about enforcement. This court's decision this year in Noe v. BMW, the counsel mentioned, says exactly that. It says you cannot conflate the question of who with the question of which claims are covered. Nor does it matter under California law, for purposes of third-party beneficiary analysis, what particular claim we're talking about. If the court looks at Goonwardine, which is the leading California Supreme Court decision on third-party beneficiary, it doesn't analyze the question on a claim-by-claim basis. It looks at the contract and says, does it make sense to think that the party's intended to benefit this third party when they sign this contract? And here, when the arbitration agreement expressly talks about affiliates, there's just no way to explain that language other than by concluding that the party's intended to benefit that third party. So I think the scope thing is just a complete red herring in this case. I'd also like to address, if I could, the parade of horribles about some third party who has no idea that they're even mentioned in this contract, a nanny or something, somehow being compelled to arbitrate. Of course, if someone showed up and said, I never agreed to this, then the court can't send it to arbitration without resolving that factual dispute. Nobody's disputing that. But here, nobody is claiming that they didn't assent to the contract. The terms cover us. We're here saying, yes, we agreed to this. We want to enforce it. And they admit that they entered the contract and assented to its terms. So, again, both sides agree they assented to it. The language covers it. I don't really understand why we would not be allowed to enforce that according to the plain terms. Counsel, your rebuttal time has expired. Oh, I'm sorry. I want to see if anybody has any questions for you. Any questions? No, thank you. Okay. Thank you, counsel. Thank you both for your arguments this morning. It's an interesting case, and your argument has been very helpful to the court. We'll be in recess for the morning. All rise. This court for this session stands adjourned.
judges: THOMAS, BENNETT, Dorsey